A. L. GALEMORE V. THE STATE.

No. 15990.   Delivered May 31, 1933.
Reported in 61 S. W. (2d) 519.

The opinion states the case.

*F. J. Ford,* of Decatur, Texas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for burglary, punishment assessed at two years in the penitentiary.

Our state's attorney very frankly says in his opinion the evidence is not sufficient to support the conviction. We are constrained to agree with him.

It was charged by proper averments in the indictment that appellant broke and *entered* a house belonging to Price with intent to steal property belonging to him. The facts show that appellant and two companions (Rich and Sanders) were seen in a cafe in Bridgeport at night. The night watchman heard them talking; two of them were complaining of being sleepy, and wanted to go home and go to bed. The third boy said if they were getting sleepy he would take them home. When they came out of the cafe, the boy, afterwards found to be Sanders, drove off in the car with the other two. Later Sanders was again seen to drive up in front of the cafe. He was alone in the car at that time. Sanders testified as a witness for the state. He lived about ten miles in the country. He said he went to see his girl who lived in Bridgeport and had let Rich and appellant out of the car near the railroad tracks. Price testified as follows: He arrived home about eleven-thirty at night, turned out the lights, and sat down on his bed; at this time he heard a noise on the outside, got his gun, and walked out on the porch; it was a bright moonlight night; he saw a party,—who turned out later to be appellant,—coming over the fence into the garden; appellant went to the garage, opened the door, looked in, and closed that door. He then went to a feed barn, opened the door, looked in, and closed that door; he then went to the chicken house, opened the door to it, and looked in. At this point Price unlatched the screen door on the porch; apparently appellant heard him, and laid down on the ground. Price called to him to get up, but appellant remained lying on the ground. Price shot near him, and appellant got up. Price asked him what he was doing there and appellant replied that he "was looking for a place to sleep." The garage was empty,

the car being parked on the outside near the house. The record does not show whether there was anything in the chicken house or feed barn. The proof is direct and affirmative from Price that appellant at no time did anything more than open the doors to the several houses and look in. There is no evidence that he went into either building, or reached in with his hand as if to take anything therefrom. Nothing occurred to prevent him from going into the garage or feed barn, and nothing,— except that he might have heard Price open the screen door,— prevented him from going into the chicken house. After Price had accosted him, appellant jumped over the fence and ran away. Later he and Rich were arrested near the depot and placed in jail.

Burglary is constituted by *entering* a house by force, threats, or fraud with the intent to commit theft. Article 1389, P. C. Article 1392, P. C., provides: "The 'entry' into a house includes every kind of entry but one made by the free consent of the occupant, or of one authorized to give such consent; it is not necessary that there should be any actual breaking to constitute burglary, except when the entry is made in the daytime."

Article 1393, P. C., reads, in part, as follows: "The entry is not confined to the entrance of the whole body; it may consist of the entry of any part for the purpose of committing a felony or theft * * * or by the introduction of any instrument for the purpose of taking from the house any personal property, although no part of the body of the offender should be introduced."

In dealing with burglary such as charged in the present instance, the offense is not complete unless there is an *"entry"* of some kind into the building charged to have been burglarized, and that entry, if any, in the present instance must have been made with intent to commit the crime of theft, for it is so charged in the indictment. The evidence of the owner of the houses shows that the act of opening the closed doors was sufficient force applied to the buildings to constitute a "breaking" as defined in the burglary statute, but his evidence further shows that at no time did appellant make any kind of "entry" into any one of the three houses. If it should be claimed that the evidence is sufficient to show he intended to enter the chicken house and was deterred therefrom by hearing the noise of Price opening the screen door, and he intended to "enter" such chicken house to commit theft, he might be guilty of an attempt to commit burglary,—although we entertain serious doubt of the sufficiency of the evidence on that issue,—but certainly the evidence falls short of showing the complete offense

of burglary. In the case of Mason v. State, 100 S. W., 383, accused was upon trial upon a charge of attempting to burglarize a store building. The evidence shows that there were a number of shoes in a show window. Accused broke the window, apparently intending to reach his hand through the broken place and take some of the shoes, but before he could insert his hand an officer, who had witnessed the breaking, arrested him. The court said: "* * * where one breaks a store door or window with the specific intent to enter there, the evidence clearly showing a purpose on the part of appellant to enter same, either with his hand or his whole body, and thereafter takes thereout property of any value, he is guilty of burglary; but if the attempt falls short of consummation, and the party is arrested before entry is completed, he would be guilty of attempt to commit burglary."

Being convinced that the evidence fails to support a conviction for burglary, the judgment is reversed and the cause remanded.

*Reversed and remanded.*