773 So.2d 46 (2000)
Terrell Curtis DREW, Petitioner,
v.
STATE of Florida, Respondent.
No. SC95785.
Supreme Court of Florida.
November 9, 2000.
Paula C. Coffman, Orlando, Florida, for Petitioner.
Robert Butterworth, Attorney General, Robert J. Krauss, Senior Assistant Attorney General, and Johnny T. Salgado, Assistant Attorney General, Tampa, Florida, for Respondent.
ANSTEAD, J.
We have for review Drew v. State, 736 So.2d 1188 (Fla. 2d DCA 1999), based on certified direct conflict with the decision in State v. Hankins, 376 So.2d 285 (Fla. 5th DCA 1979). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. At issue in this case is whether the act of removing hubcaps or tires from a vehicle in and of itself constitutes a burglary. The Second District in Drew (tires) and State v. Word, 711 So.2d 1240 (Fla. 2d DCA 1998) (tires) held that there was a burglary while the Fifth District in Hankins (hubcaps) held there was not. Based on the purpose and history of the offense of burglary at common law and our interpretation of the burglary statute, we hold that the sole act of removal of hubcaps or tires from a motor vehicle, while clearly constituting an act of criminal larceny, does not constitute a burglary.

*47 FACTS
On July 14, 1997, at approximately 11 p.m., Polk County Sheriffs Deputy James Orgic observed Terrell Curtis Drew and his codefendant, Willie D. Wright, in the vicinity of Mack Lewis Auto Sales. Orgic testified that Drew was carrying a lug wrench at the time and was using it to remove lug nuts from a vehicle. Drew admitted that he took the lug nuts from a brownish-red Chevrolet parked behind the Auto Sales business and that with the assistance of his codefendant, he had removed the missing tires from the car.[1] Subsequently, Drew and Wright were charged by information with petit theft, possession of burglary tools, and burglary of a conveyance in violation of sections 812.014(3), 810.06 and 810.02(4), Florida Statutes (1997), respectively. Drew filed a motion to dismiss the burglary and possession of burglary tools charges, asserting that the undisputed material facts as set out above did not constitute a prima facie showing of guilt on these charges. The trial court denied this motion and the case proceeded to trial. At trial, Drew did not dispute that he had removed tires from the car. Instead, his attorney contended that on these facts, Drew could not be found guilty of burglary or of possession of burglary tools.[2]
After the State rested its case, Drew moved for a judgment of acquittal and again specially argued that the counts of burglary and possession of burglary tools did not apply to these circumstances. This motion was denied and the jury returned guilty verdicts on all three of the offenses charged. Drew was adjudicated guilty and sentenced to 364 days in the county jail for the burglary charge with credit for time served, 364 days in the county jail for the possession of burglary tools charge, and to time served for the petit theft, all such sentences to run concurrent with each other. Drew appealed to the Second District, and his conviction and sentence were per curiam affirmed on the authority of the court's prior decision in Word that the removal of tires from a motor vehicle constituted a burglary.

BURGLARY
At common law, burglary was defined as breaking and entering the dwelling house of another at night with the intent to commit a felony therein. See 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 8.13, at 464 (1986). The underlying purpose of the crime of burglary was to punish the forcible invasion of a habitation and violation of the heightened expectation of privacy and possessory rights of individuals in structures and conveyances. See Presley v. State, 61 Fla. 46, 48, 54 So. 367 (1911). As Sir William Blackstone once explained: "[burglary] has always been looked upon as a very heinous offense: not only because of the abundant terror that it naturally carries with it, but also as it is a forcible invasion of that right of habitation, which every individual might acquire in a state of nature." 4 William Blackstone, Commentaries on the Laws of England 223 (1769).
In 1962, a definition of burglary was approved by the drafters of the Model Penal Code that closely resembled the common law crime:
(1) Burglary Defined. A person is guilty of burglary if he enters a building *48 or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter. It is an affirmative defense to prosecution for burglary that the building or structure was abandoned.
Model Penal Code, § 221.1(1), at 60-61 (1980). The commentary to this section explains that this definition attempted to restate the original reach of the crime:
The needed reform [of the offense of burglary] should take the direction of narrowing the offense to reflect more appropriately the distinctive situation for which it was originally derived. The offense has thus been limited in the Model Code to the invasion of premises under circumstances especially likely to terrorize occupants. Most of the extensions of the offense that have been added by legislation over the years have been discarded.
Model Penal Code, § 221.1 cmt. 2, at 67.

FLORIDA BURGLARY
Of course, burglary of a conveyance was unknown at common law and is not included as part of the 1962 Model Penal Code definition of burglary as set out above. Rather, burglary of a conveyance is a creature of statute. In Florida, burglary is defined in a way largely consistent with the Model Penal Code but expanded to include conveyances:
Burglary means entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.
§ 810.02(1), Fla. Stat. (1997). Section 810.011(3), Florida Statutes (1997), defines conveyance as "any motor vehicle, ship, vessel, railroad car, trailer, aircraft, or sleeping car." In addition, "`to enter a conveyance' includes taking apart any portion of the conveyance." § 810.011(3), Fla. Stat. (1997).
This Court construed the statutory definition of entry of a conveyance in Von Edwards v. State, 377 So.2d 684 (Fla.1979), and, based upon that construction, rejected a claim that the statutory definition of burglary was unconstitutionally vague or overbroad. In rejecting the claim of overbreadth we accepted the State's proffered interpretation of the statute:
The state responds that the word "therein" in section 810.02(1) requires that when the entering of a conveyance is committed, there must be an intent to commit an offense "therein," citing State v. Dalby, 361 So.2d 215 (Fla. 2d DCA 1978). Thus, the legislative intent is that the removal of a portion of the conveyance must be to facilitate the commission of an offense within the conveyance. Thus the statute does not seek to punish as burglary conduct which should be treated as larceny. We agree.
Id. at 685 (emphasis supplied).
Subsequently, in State v. Stephens, 601 So.2d 1195 (Fla.1992), we held that burglary of a conveyance can be proven even when the underlying offense intended to be committed is the stealing of the conveyance itself. See id. at 1196. Relying on the common English usage of the word "therein," this Court held "[t]he use of the word `therein' plainly indicates that the crime of burglary can exist if the defendant formed an intent to commit a crime `in that place.'" Id. at 1196 (emphasis added). Moreover, we explained:
We believe the district court's error in this case was based on a misconception of the temporal sequence usually involved in burglaries of conveyances. Such a burglary is complete the moment the defendant enters or remains within the vehicle with the requisite intent. Even if the defendant changes plans and decides not to steal the vehicle, the crime of burglary still would exist.
*49 Id. at 1197 (emphasis added). Importantly, in Stephens, we observed that the district court had erred in any reliance on the Fifth District's holding in Hankins that the removal of hubcaps was insufficient to constitute a burglary of a conveyance, because "[o]bviously, there was no `entering or remaining in' the conveyance in that instance." Id. at 1196. Hence, we tacitly approved the holding in Hankins in our analysis.

ENTRY OF A CONVEYANCE
Other cases have also declined to find that facts similar to those herein could be characterized as a burglary. The Fourth District recently considered this issue in Jones v. State, 763 So.2d 1101 (Fla. 4th DCA), review granted, 760 So.2d 948 (Fla. 2000), where the defendant appealed a conviction for burglary based solely upon the removal of hubcaps and lug nuts from the wheels of an automobile. On appeal, the court reversed the burglary conviction, relying on our decision in Von Edwards and the statement therein that "the legislative intent is that the removal of a portion of the conveyance must be to facilitate the commission of an offense within the conveyance." Id. at 1102 (quoting Von Edwards, 377 So.2d at 685) (emphasis added). Based on this language from Von Edwards, the Jones court concluded that the removal of a wheel, tire, hubcap, or lug nut, or any combination thereof, from the outside of a conveyance, cannot constitute burglary because "[u]nder those circumstances there is no `intent to commit an offense therein,' i.e., within the vehicle."[3]See id. at 1103. The court also noted that Word did not address the requirement discussed by this Court in State v. Stephens, 601 So.2d 1195 (Fla.1992), that the offense must be capable of being committed within the vehicle. See Jones at 1103.
Of course, we have already noted the Fifth District's holding in Hankins that the removal of hubcaps alone did not constitute a burglary. In an opinion by Associate Judge Parker Lee McDonald, the Hankins court explained:
The gravamen of the offense of burglary, whether of a conveyance or otherwise, is a nonconsensual entry with the intent to commit an offense within; the purpose of the statute is to punish an invasion of the possessory property rights of another in structures and conveyances. The definition of "entering a conveyance" in Section 810.011(2) does not obviate the necessity for alleging facts in support of an intent to commit an offense therein.

376 So.2d at 286 (citations omitted) (emphasis added). Similarly, in R.E.S. v. State, 396 So.2d 1219 (Fla. 1st DCA 1981), the court held that the sole act of siphoning gasoline from a car was not a burglary. There, the court reasoned that the cases upholding convictions for burglary of automobiles involved entry into a compartment of a vehicle which can be entered wholly or partially by a person. See id. at 1220.[4]
On the other hand, a number of Florida cases have considered "entry of a conveyance" in other contexts and have applied a more expansive meaning to "entry." For example, the Second District held in Word that the removal of a tire from a motor vehicle constituted a burglary. Other cases have reached seemingly similar results. See, e.g., Braswell v. State, 671 So.2d 228, 229-30 (Fla. 1st DCA 1996) (holding that reaching into the bed of a pickup truck to remove a secured *50 item within the truck was an entry); Greger v. State, 458 So.2d 858, 860 (Fla. 3d DCA 1984) (holding that the loosening and removal of bolts and nuts from the protruding motor at the stern of the boat constituted an entry for purposes of the burglary statute); State v. Harvey, 403 So.2d 630, 630 (Fla. 2d DCA 1981) (holding that defendant's loosening of the bolts in the engine compartment underneath the car with the intent to remove the alternator was sufficient to constitute an entry); Bragg v. State, 371 So.2d 1082, 1083 (Fla. 4th DCA 1979) (holding it was proper to convict the defendant of burglary for opening the hood of a vehicle with intent to remove the battery).[5]

OTHER JURISDICTIONS
Other jurisdictions with burglary statutes similar to Florida's have also construed their statutes in a manner similar to our analysis in Von Edwards. For example, the Texas statute defines burglary of a vehicle as follows:
A person commits an offense if, without the effective consent of the owner, he breaks into or enters a vehicle or any part of a vehicle with intent to commit any felony or theft.
Tex. Penal Code Ann., § 30.04(a) (Vernon Supp.2000). Further, as in Florida, the Texas Penal Code defines "enter" as "to intrude any part of the body or any physical object connected with the body" into the motor vehicle or a part thereof. Id. § 30.04(b)(1)-(2). Based on this statute, the Texas Court of Criminal Appeals has held that the removal of tires and hubcaps alone is insufficient to constitute an entry under the Texas burglary statute. See Griffin v. State, 815 S.W.2d 576 (Tex.Crim. App.1991). There, the court emphasized that the focus of the inquiry as to burglary should be on the "breaking of" or removing of things from an enclosed or interior area:
Because "enter" is defined exactly the same for burglary of a building or habitation as it is for burglary of a vehicle, the element of intrusion into a building or habitation under § 30.02 should be of the same nature as intrusion into a vehicle under § 30.04. Stealing a mailbox or a window shutter attached to the side of a house would not be entry so as to constitute burglary. Similarly, stealing a hood ornament or antenna attached to the outside of a vehicle would not be entry so as to constitute burglary of a vehicle. Tires and hubcaps are analogous to these examples, because no entry of any part of the vehicle is effected.
Contrast the taking of something from inside the trunk, inside the hood, or from the interior of the vehicle. There must be a "breaking of the close" to have entry in the sense long established for burglary. The protection is to the interior or enclosed part of the described object, be it a house, a building or a vehicle. Cf. Galemore [v. State, 124 Tex.Crim. 77, 61 S.W.2d 519 (1933)], where opening a door and looking in is not burglary because there is no entry. Taking items attached to the outside of the vehicle, house, or building that does not reflect an entry into an interior or enclosed part of the described object in order to steal does not constitute the offense of burglary. Since the burglary of a vehicle statute evolved from the "regular" burglary statutes, the interpretation of entry should be consistent. Therefore, we hold that taking the hubcaps or tires that are attached to the *51 outside of the car, when no entry into any enclosed portion of the car is made to effectuate that taking, is not burglary of a vehicle.
Id. at 579.[6]
In California, the burglary statute provides: "Every person who enters any ... vehicle ... when the doors are locked ... with intent to commit grand or petit larceny or any felony is guilty of burglary." Cal.Penal Code, § 459 (West.1999). In People v. Young, 49 Cal.App.4th 861, 57 Cal.Rptr.2d 12 (1996), the court held that the removal of headlights from a parked car did not constitute a burglary:
Unlike the car's interior or its trunk, headlamp housings can be "entered" without regard to whether the car is locked, and we view the theft of headlights the same as we would the theft of windshield wipers or hubcaps. These are thefts (or attempted thefts) or auto tampering or acts of vandalism, not burglaries.
Id. at 14. In its opinion, the court relied upon its earlier holding in People v. Toomes, 148 Cal.App.2d 465, 306 P.2d 953 (1957), wherein it was explained that an essential purpose of section 459 was to make it a more serious offense to break into the interior of a car as opposed to tampering with or removal of exterior parts unconnected with entry into the vehicle itself. See id. at 14. As in Texas, the focus of the California decisions in analyzing the entry requirement is on whether the defendant entered an interior section of a vehicle.

INTERIOR VS. EXTERIOR
In our decisions in Von Edwards and Stephens we have recognized that Florida's burglary statute provides that taking apart any portion of a conveyance constitutes an entry. However, we have explained that the offense of burglary requires more than an entry, and there must also be proof of the requisite statutory intent to commit a crime within the conveyance. In this way the statute cannot be used to punish as burglary "conduct which should be treated as larceny." Von Edwards at 685.
For example, in Hankins, as in this case, the State attempted to show that the removal of the hubcaps was the act constituting the entry as well as the crime intended to be committed therein. Although the Hankins court concluded that the removal of the hubcaps did not constitute an entry, it further explained that "[c]learly, the theft of hubcaps from an automobile wholly fail[ed] to establish a prima facie case of intent `to commit an offense therein.'" 376 So.2d at 286. The Fourth District in Jones similarly held that the removal of the hubcaps does not constitute a burglary because "[u]nder those circumstances, there is no `intent to commit an offense therein' i.e., within the vehicle." 763 So.2d at 1103.
As noted above, some courts have applied the statutory definition of entry as if that was all that was required to prove a burglary. As was noted in Jones, it appears the Word court failed to consider our holding in Von Edwards when it held in a conclusory fashion that the "theft of the wheels and tires removed from the automobile supply sufficient evidence of his intent to commit an offense after entering the automobile by taking apart or removing the wheels and tires." Word, 711 So.2d at 1241. Clearly, the Word court relied on the same act to satisfy both requirements of the statute, an illegal entry *52 as well as the intent to commit a crime within the conveyance. This analysis is inconsistent with our reasoning in Von Edwards and Stephens. In fact, as explained by comment 3(c) to section 221.1 of the Model Penal Code, "[t]he word `therein' in Subsection (1) of the Model Penal Code provision ... requir[es] that the intent be to commit an offense after the entry has been effected."
Arguably, in some of the other cases, the courts did consider whether the entry was merely to facilitate the commission of an offense within the vehicle. For instance, in Bragg, lifting a hood (entry) may be seen as different from the act of actually removing the engine (the crime intended to be committed). Similarly, in Braswell, defendant's sticking his hand into the bed of the pickup truck (entry) may be distinguished from the removal of the object (the crime intended to be committed). Although such distinctions will ordinarily not present a problem because usually the conduct supporting the entry and the crime to be committed therein are easily identifiable and exclusive of each other, courts must be careful not to end the analysis once it is determined that an entry has occurred. As noted above, such a limited analysis would render meaningless that portion of the burglary statute requiring an intent to commit an offense within the vehicle.
In other words, a proper analysis of the offense of burglary must focus both on the act constituting the entry and the intent to commit an offense therein. The language of the burglary statute, as drafted by the Legislature, requires both an entry and the requisite intent to commit a crime within the conveyance. Therefore, it follows that the crime must be one that is capable of being committed within or inside the vehicle. Moreover, it naturally follows that an entry into a vehicle without the requisite intent to commit a separate crime therein is not a burglary. Thus, while the actual penetration into any interior or enclosed area may constitute an entry, including the removal of a portion or part of one of these areas or compartments, an intent to remove an object or commit an unauthorized act therein after the entry has occurred must also be established to satisfy the intent required to commit a crime.
This interpretation naturally follows from our previous pronouncement of the legislative intent that "the removal of a portion of the conveyance must be to facilitate the commission of an offense within the conveyance ... [and] not seek to punish as burglary conduct which should be treated as larceny." Von Edwards, 377 So.2d at 685. Moreover, such a construction renders more meaningful the overall scheme of the burglary statute and Judge McDonald's observation in Hankins that the "definition of `entering a conveyance'... does not obviate the necessity for alleging facts in support of an intent to commit an offense therein." 376 So.2d at 286. It inherently follows from this interpretation that those acts deserving of a burglary conviction should be distinguished from those that constitute a criminal larceny, such as the removal of an antenna, hood ornament, or hubcap from a vehicle.

CONCLUSION
For the foregoing reasons, we quash the decision in Drew and approve the decision in Hankins. Accordingly, we remand for further proceedings consistent with this opinion.
It is so ordered.
HARDING, PARIENTE and LEWIS, JJ., concur.
SHAW, J., concurs in result only.
QUINCE, J., dissents with an opinion, in which WELLS, C.J., concurs.
QUINCE, J., dissenting.
The definition of conveyance as outlined in section 810.011(3), Florida Statutes *53 (1997), provides a meaning also for the term "to enter a conveyance" which includes the taking apart any portion of the conveyance. A portion of the conveyance was in fact taken apart in this case, the tires. See State v. Word, 711 So.2d 1240 (Fla. 2d DCA 1998). Therefore, I would, consistent with the reasoning in Word, affirm the decision of the district court in Drew v. State, 736 So.2d 1188 (Fla. 2d DCA 1999).
WELLS, C.J., concurs.
NOTES
[1] Mack Lewis, the owner of Mack Lewis Auto Sales, testified that three tires were missing from the car when he arrived that night after being notified of the incident by the police.
[2] In fact, during opening arguments, Drew's attorney stated:

Ladies and gentleman of the jury, I'm going to tell you something very interesting right now. I'm going to tell you something that you probably didn't expect to hear at trial, and that is that Mr. Drew sits before you a guilty person. He is guilty of Count II of the information. He is guilty of petit theft. He took the tires off the car. The reason why you are here today is to decide whether or not he is guilty of burglary and possession of burglary tools.
[3] The Jones court certified conflict with Word, and Jones is currently before this Court for review.
[4] In Kirkland v. State, 142 Fla. 73, 194 So. 624 (1940), a case predating the current burglary statute, this Court stated in dicta that draining a few gallons of gas out of a storage tank was the equivalent of drawing gas out of an automobile gas tank, and as such, the conduct could only warrant a charge and conviction of petit theft. At the time Kirkland was decided, the burglary statute did not include the "taking apart any portion" language used by the Legislature to define entry. This requirement was added in 1974. See ch. 74-383, § 30 Laws of Fla.
[5] The court in Zipperer v. State, 481 So.2d 991 (Fla. 5th DCA 1986), albeit per curiam, also affirmed convictions for both theft and burglary of a conveyance. However, Judge Upchurch in dissent expressed his disagreement that the removal of a beer cooler from the open bed of a pickup truck could be considered an entry for purposes of a conviction under the burglary statute. See id. at 993 (Upchurch, J., dissenting). He opined that such action was no more reprehensible than taking the same cooler if it had been resting on the roof or fender of a vehicle or on the ground next to it because in each situation there is no penetration of an enclosed area as required by the burglary statute. See id.
[6] This analysis has been subsequently followed and consistently applied in Texas. See Ford v. State, 860 S.W.2d 731 (Tex.App.1993) (clarifying distinction of Griffin between items attached to a conveyance and those items located within the interior, and holding that removal of screwdriver and wrench inside a tool box bolted and welded to the bed of truck was an entry and thus a burglary because the bed of the pickup was considered the interior of the vehicle); Richardson v. State, 888 S.W.2d 822 (Tex.Crim.App.1994) (holding that reaching in and stealing fishing rods from bed of a pickup truck was an entry and burglary because although the bed is an open area, it is clearly an interior portion).