# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned On Briefs November 6, 2012

## STATE OF TENNESSEE v. RONALD MCKNIGHT

### Appeal from the Criminal Court for Davidson County
### No. 2011-B-1159    Cheryl Blackburn, Judge

---

### No.  M2012-00573-CCA-R3-CD    Filed March 11, 2013

---

Appellant, Ronald McKnight, was indicted by the Davidson County Grand Jury for one count of aggravated burglary.  After a jury trial, Appellant was convicted as charged and sentenced to fifteen years as a career offender.  On appeal, Appellant argues that the evidence was insufficient to support his conviction.  After a thorough review of the record, we conclude that the evidence was sufficient.  Therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Jason Chaffin, Nashville, Tennessee, for the appellant, Ronald McKnight.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

On January 24, 2011, Chuck Dorris was working on his computer in his condominium on Ellington Place in Madison, Tennessee.  Around 11:00 a.m., Mr. Dorris heard a loud "boom" that shook the building.  Immediately thereafter, he heard a rumbling sound.  He looked out his window and saw an unfamiliar car, a black Ford Taurus, in the parking spot of one of his neighbors.  He saw an African-American male sitting in the driver's seat.

Mr. Dorris took some trash out to the dumpster in order to investigate. As he walked to and from the dumpster, Mr. Dorris took pictures of the car with his cellphone. He noticed that the man in the driver's seat ducked down into the car.

When he returned to his condominium, Mr. Dorris continued to look out of the window. A few minutes later, the Ford Taurus pulled out of the parking lot. Mr. Dorris went outside an took more pictures with his cellphone. The Ford Taurus proceeded up the road to stop sign. Mr. Dorris proceeded to the stop sign. At this point, two other men came from behind Mr. Dorris's building and met the car at the stop sign. One man was carrying clothes, and the other man was carrying a television wrapped in some clothes. At trial, Mr. Dorris identified Appellant as the man carrying the clothes. One man confronted Mr. Dorris. Mr. Dorris took his picture. The car drove away. As Mr. Dorris was standing in the road taking pictures of the car, a Metro Nashville police officer drove down the road. Mr. Dorris waved him down and pointed toward the retreating car. Mr. Dorris returned to his condominium and called 911. He discovered that the victim's back door was damaged and standing wide open. Mr. Dorris spoke with officers concerning his observations.

Officer Loren Russell, a patrol officer with the Metro Nashville police department, was driving his patrol car on Ellington Place when he saw Mr. Dorris motioning to the black Ford Taurus. Officer Russell began following the car with his blue lights activated. He radioed for assistance. Other units responded and Officer Russell allowed them to take the lead because he was no longer on duty.

The black Ford Taurus pulled into a driveway after a fifteen minute pursuit. The officers who were on-duty got three individuals out of the car and arrested them. Officer Russell was able to see the car throughout the pursuit. He stated that the car never stopped to either let people out of or into the car. Therefore, the same individuals who were arrested when the car was stopped were the same individuals who were in the car when he began following it. Officer Russell saw a flat screen television in the black Ford Taurus.

Officer Michael Wilson, with the Metro Nashville Police Department, responded to a call on Ellington Place and spoke with Mr. Dorris. Officer Wilson investigated the back door of the apartment of Eric Chatman, the victim. Officer Wilson saw signs of a forced entry at the victim's back door. Officer Wilson found a television box in the victim's apartment. He spoke with the officers who were with the suspects and the car. The serial number on the television box in the victim's home matched the serial numbers on the television found in the suspects' car.

Detective Christopher Cote was at the North Station when the three defendants were brought in after their arrest. The individuals were identified as Dejuane McKnight, Antwon

Trice, and Ronald McKnight, Appellant. Detective Cote took custody of the television recovered from the black Ford Taurus. He confirmed that the serial numbers matched on the television and the television box found in the victim's residence. Detective Cote later returned it to the victim when the victim came to the station. Detective Cote obtained warrants for the arrest of Appellant and his co-defendants.

Dejuane McKnight, Appellant's co-defendant and brother, reluctantly testified at Appellant's trial. He confirmed that he was serving a sentence for the incident at hand. He stated that Appellant started the discussion and planning of the burglary. McKnight agreed that he had testified at his own guilty plea hearing that he and his brother, Appellant, entered the victim's apartment. He admitted that they had stolen the television and that Antwon Trice waited in the getaway car while they were in the condominium.

The victim, Mr. Chatman, testified that he is Metro Nashville bus driver. On the day in question, he was driving his route and could not get home to assess the damage until he was finished. When he arrived home, he discovered that the back door was damaged and he was missing a television. He stated that he had not given anyone permission to enter his residence or take any items from his residence.

At the conclusion of the trial, held on October 31, 2011, a Davidson County jury convicted Appellant of aggravated burglary, as he was charged. On December 14, 2011, the trial court held a sentencing hearing and sentenced Appellant to fifteen years as a career offender with a sixty-percent release eligibility. Appellant filed a timely notice of appeal.

**ANALYSIS**

Appellant's sole issue on appeal is that the evidence was insufficient to support his conviction of aggravated burglary. Appellant specifically argues that there was no direct evidence to place Appellant in the victim's home and that the testimony of Appellant's brother and co-defendant, Mr. McKnight is "highly questionable." The State disagrees.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally deemed with a presumption of innocence, the verdict of guilty removes this presumption and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn.1997); *State v. Tuggle*, 639 S.W.2d 913, 914

(Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.*

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *see Tuggle*, 639 S.W.2d at 914.

A defendant may be convicted on the basis of direct or circumstantial evidence or a combination of both. *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003); *see also State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In fact, circumstantial evidence alone may be sufficient to support a conviction. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987). Moreover, the state does not have the duty to exclude every other hypothesis except that of guilt. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (adopting the United States Supreme Court standard that the jury is only required to weigh evidence, whether direct or circumstantial, against the reasonable doubt standard); *see also State v. James*, 315 S.W.3d 440, 455 n.14 (Tenn. 2010) (noting that federal courts have rejected the notion that the government has a duty to exclude every other hypothesis save that of the defendant's guilt). "Circumstantial evidence in this respect is intrinsically no different from testimonial evidence." *Holland v. United States*, 348 U.S. 121,

140 (1954). Therefore, when considering the sufficiency of evidence, we treat direct and circumstantial evidence the same.

Burglary is committed when a person "without the effective consent of the property owner . . . [e]nters a building other than a habitation . . . not open to the public, with intent to commit a felony, theft or assault." T.C.A. § 39-14-402(a)(1). Aggravated burglary is the burglary of a habitation. T.C.A. § 39-14-403(a). "Aggravated burglary is a property offense and is completed upon entry into the habitation." *State v. Cowan*, 46 S.W.3d 227, 234 (Tenn. Crim. App. 2000) (citing T.C.A. § 39-14-402(a)(1), -403(a); *State v. Ralph*, 6 S.W.3d 251, 255 (Tenn. 1999)).

When taken in a light most favorable to the State, Mr. Dorris heard a loud booming noise and went to investigate. When he went outside, he saw an unfamiliar car with an unfamiliar man in the parking lot of the condominium building. Shortly thereafter, Mr. Dorris saw two men come from behind the building carrying a television and some clothes. They met got into the car with the television and the clothes. The car drove away and Mr. Dorris flagged down Officer Russell who happened to be passing by at that time. Officer Russell alerted other units and proceeded to engage in a pursuit of the car. The car never stopped to allow anyone to get in or out. When the car finally stopped and the men were arrested, officers found a television. It was confirmed that the serial number on the television matched the serial number on a television box found in the victim's residence. The victim arrived home to find his back door damaged and a television missing. We conclude that a reasonable trier of fact could have found Appellant guilty of all the elements of aggravated burglary.

Appellant also argues that the testimony of Dejuane McKnight was not reliable. As stated above, the credibility of witnesses is an issue left to the trier of fact, in this case the jury. In this case, the jury clearly found the witness in question to be a credible witness.

Therefore, this issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE

-5-