IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 15, 2005

## STATE OF TENNESSEE v. JEFFERY LYNN ANDERSON

**Direct Appeal from the Circuit Court for Dyer County**
**No. C04-132    Lee Moore, Trial Judge**

———————————

**No. W2004-03080-CCA-R3-CD  - Filed December 5, 2005**

———————————

The defendant, Jeffery Lynn Anderson was convicted by a jury of one count of burglary of a motor vehicle.  On appeal, the defendant challenges the sufficiency of the convicting evidence.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Timothy Boxx (on appeal) and Charles S. Kelly, Sr. (at trial), Dyersburg, Tennessee, for the appellant, Jeffery Lynn Anderson.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The following evidence was presented at trial.  Bob Simpson testified that on October 16, 2004, he attended a meeting at the Dyersburg County Courthouse.  After the meeting adjourned around 10:00 p.m., he returned to his pickup truck parked on the court square.  As he approached his truck, he noticed someone inside his truck.  He then put his hand on top of the truck door and asked the man what he was doing.  At that moment, the man "jumped out and took off."

Mr. Simpson testified that he chased the man for a while, but stopped.  He then flagged down Officer Eric Wells of the Dyersburg Police Department, told him what just happened, and gave a description of the man.  Mr. Simpson described the man as a redhead, wearing a white shirt and black pants.  He also told Officer Wells that the man ran around the north side of the court square,

and headed toward First Citizens Bank. After Officer Wells left, Mr. Simpson walked back to his truck and discovered that someone had attempted to remove his radio. According to Mr. Simpson, everything but the antenna wire was loose and the radio appeared "ready to come out." Mr. Simpson testified that a few minutes later he identified an individual Officer Wells stopped in front of Paul's One Hour Cleaners as the individual who was in his truck. Mr. Simpson stated that he did not give this individual permission to enter into his truck.

Officer Wells testified that he was on patrol around the court square when he was flagged down by Mr. Simpson. Mr. Simpson told him that he "caught somebody in his truck." Mr. Simpson described the individual as "a red-headed gentleman" wearing a "white dress shirt" and "black pants." After being told by Mr. Simpson that the man headed toward First Citizens Bank, Officer Wells drove to that area looking for the individual matching the description given by Mr. Simpson. Shortly thereafter, Officer Wells observed the defendant, who matched the description, standing in front of Paul's Cleaners. According to Officer Wells, the defendant "was red-headed, had on a white dress shirt and had on black pants."

Officer Wells testified that he stopped the defendant and asked him to identify himself. In response, the defendant produced a state ID, identifying himself as Jeffery Anderson. Officer Wells stated that he also patted the defendant down for weapons and discovered a pair of vice grips in the defendant's back left pocket. Officer Wells also noticed that the defendant was carrying a ball of string.

Officer Wells testified that Mr. Simpson was brought to where the defendant was stopped and made a positive identification. The defendant was then placed under arrest and escorted back to the square. As Officer Wells and another officer were taking inventory of the defendant's possessions, Mr. Swafford saw the vice grips and stated, "Those look like mine." According, to Officer Wells, Mr. Swafford checked his truck, which was parked next to Mr. Simpson's truck, and discovered that his vice grips were missing from his truck. On cross-examination, Officer Wells admitted he did not check the vice grips for Mr. Swafford's fingerprints and acknowledged that the vice grips found on the defendant were the same kind of vice grips sold in hundreds of stores everywhere.

Joe Swafford testified that he was returning to his vehicle when he heard "somebody had been in [Mr. Simpson's] truck trying to get his radio." Mr. Swafford decided to hang around and keep Mr. Simpson company. After the police officers returned to the square, Mr. Swafford noticed Officer Joyner carrying some vice grips. Mr. Swafford told the officer that he had some vice grips in his truck and went to see if his vice grips were still in the truck. Mr. Swafford explained that after looking in his truck, he noticed that his vice grips were missing.

Officer Jim Joyner of the Dyersburg Police Department testified that he assisted Officer Wells in arresting the defendant. Officer Joyner observed that the defendant had on a white shirt and black pants. Officer Joyner also verified that some rope and vice grips were found on the defendant's person. Officer Joyner testified that Mr. Simpson identified the defendant as the person

who broke into his truck. Officer Joyner also corroborated Mr. Swafford's testimony regarding the fact that vice grips were missing from Mr. Swafford's truck.

The defendant elected not to testify. Based upon the evidence, the jury found the defendant guilty of one count of burglary of an automobile.

## ANALYSIS

On appeal, the defendant argues that evidence was insufficient to support his conviction for burglary of an automobile. Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this Court why the evidence will not support the jury's verdict. State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. Carruthers, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this Court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. Id.

After considering the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the defendant guilty of burglary of a motor vehicle. To sustain the defendant's conviction for burglary of a motor vehicle in this case, the State was required to prove that the defendant, without the owner's consent, entered a motor vehicle with the intent to commit a theft. Tenn. Code Ann. § 39-14-402(a)(4). Consummation of the intended theft is not necessary to complete the crime of burglary. State v. Ralph, 6 S.W.3d 251, 255 (Tenn. 1999). At trial, the evidence established that an individual was discovered inside Mr. Simpson's truck without his permission. After briefly chasing the individual, Mr. Simpson flagged down a police officer, told the officer what occurred, and described the individual as a redhead, wearing a white shirt and black pants. Upon returning to his truck, Mr. Simpson discovered that the individual had attempted to remove his radio. Shortly thereafter, the police officer stopped the defendant, a redhead, wearing a white shirt and black pants. Mr. Simpson identified the defendant as the individual he discovered inside his truck. From this evidence, the jury could reasonably find that the defendant unlawfully entered Mr. Simpson's motor vehicle with the intent to commit theft. Accordingly, this issue is without merit.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
J.C. McLIN, JUDGE